Amjad M. Khan (SBN 237325)
 *amjad@bnslawgroup.com*
Jill Ray Glennon (SBN 204506)
 *jill@bnslawgroup.com*
BROWN NERI & SMITH LLP
11766 Wilshire Boulevard, Suite 1670
Los Angeles, California 90025
Telephone:  (310) 593-9890
Facsimile:   (310) 593-9980

*Attorneys for Plaintiff*
REACHLOCAL, INC.

## UNTIED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – CENTRAL DIVISION

| | |
|---|---|
| REACHLOCAL, INC., a Delaware corporation, | CASE NO.: 2:16-cv-1007 |
|      Plaintiff, | **COMPLAINT FOR:** |
|      v. | **(1) TRADE SECRET MISAPPROPRIATION;** |
| PPC CLAIMS LIMITED, a British limited company; KIERAN PAUL CASSIDY, an individual, | **(2) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;** |
|      Defendants. | **(3) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; AND** |
| | **(4) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200.** |
| | **(5) DECLARATORY RELIEF** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff ReachLocal, Inc. ("ReachLocal") makes the following allegations against Defendants PPC Claims Limited ("PPC Claims") and Kieran Paul Cassidy ("Cassidy").

## INTRODUCTION

1.  This case arises from Defendants PPC Claims' and Cassidy's unlawful misappropriation of Plaintiff ReachLocal's confidential and proprietary customer lists, which Defendants subsequently used to contact ReachLocal's clients, make disparaging and misleading assertions about ReachLocal's business, disrupt ReachLocal's customer base, and encourage ReachLocal's clients to retain PPC Claims.  Defendants' conduct was intentional and malicious, having the purpose and effect of interfering with ReachLocal's existing contracts and its prospective economic advantage.  Moreover, ReachLocal's customer lists are trade secrets that are protected by the Uniform Trade Secret Act ("USTA"), California Civil Code §3426, *et seq*. Defendants' unauthorized possession and use of the customer lists constitutes trade secret misappropriation under the USTA.

2.  Plaintiff ReachLocal is an online marketing service provider, which utilizes advanced digital technology and marketing expertise to promote its customers' brands, optimize their web presence and identify leads that are most likely to be converted into sales. ReachLocal's principal place of business is in Woodland Hills, CA.  ReachLocal also has sales offices nationwide and foreign subsidiaries in Australia, Netherlands, Brazil, Canada, New Zealand, Austria, Germany, and the United Kingdom (currently in administration).

3.  Defendant PPC Claims is a British limited company that purports to represent victims of online marketing abuses, specifically focusing on misleading or unfair pay per click ("PPC") advertising practices. Its entire business model appears to center around harassing ReachLocal's customers and inducing them to turn against ReachLocal by questioning ReachLocal's pricing structure.  PPC Claims regularly fans the flames of discontent on its website where it posts

anecdotal stories about alleged misconduct by online marketing companies and touts its self-proclaimed and unsubstantiated "success" helping "as many companies as possible not only to claim the money owed to them but also in some situations help them claim for compensation through missed opportunities due to mis-sold/mismanaged Pay Per Click advertising campaigns." Exhibit 1, p.19 (screenshot of PPC Claims website).

4.     On information and belief, Kieran Paul Cassidy is a British citizen and the beneficial owner of 50% of PPC Claims. In the United Kingdom, Cassidy is disqualified and may not serve as a director of any company because the British Insolvency Service found he had deliberately confused and misled the public in connection with two failed businesses. Nonetheless, on information and belief, Cassidy is presently acting as the Head of Operations at PPC Claims where he is prominently featured on its website. Cassidy has authored numerous "News" stories on the website accusing ReachLocal UK of manipulating its clients' data to hide profit margins and deceive its clients regarding the percentage of their budget actually spent purchasing advertisements.

5.     In 2015, ReachLocal UK announced it was going into administration and winding down its business. As a result, PPC Claims' entire business strategy imploded.  Now, PPC Claims is targeting ReachLocal's clients in the United States, bragging online that PPC Claims has ReachLocal's "entire list of clients and will be starting a campaign in January to inform them of what is happening to their budgets."  See Exhibit 2, p.24 (screenshot of streetfightmag.com).  PPC Claims knew, or had reason to know, it acquired the customer lists without the express or implied consent of ReachLocal and that its use of the information was not authorized. Nonetheless, PPC Claims made good on its threat and began contacting ReachLocal's customers in 2016, making inaccurate allegations regarding ReachLocal's products with the purpose and effect of disrupting existing contracts and prospective business arrangements between ReachLocal and its

customers in California and across the United States.

6.      By misappropriating ReachLocal's trade secret information and using the trade secrets to disparage ReachLocal, Defendants intentionally and tortiously sought to harm ReachLocal's reputation and negatively affect its contracts and prospective business relationships to PPC Claims' benefit.   Furthermore, Defendants acted with the knowledge and intent that the brunt of the harm caused by its conduct would be felt by ReachLocal in California (its worldwide headquarters).

## PARTIES

7.      ReachLocal is a Delaware corporation with a principal place of business in Woodland Hills, California.

8.      PPC Claims is a British limited company registered in England and Wales.

9.      On information and belief, Keiran Paul Cassidy is an individual residing in London, England.  He is the beneficial owner of PPC Claims.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between ReachLocal and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims were directed at ReachLocal's CEO and headquarters in the District, and owing to the effects of Defendants' targeted solicitations and harmful activities in the District, this Court has personal jurisdiction of Defendants PPC Claims and Cassidy.

## GENERAL ALLEGATIONS

### ReachLocal's Online Marketing Services

12.     Plaintiff ReachLocal is an online marketing service provider, which utilizes advanced digital technology and marketing expertise to promote its customers' brands, optimize their web presence and identify leads that are most likely to be

converted into sales. ReachLocal's worldwide headquarters are located in Woodland Hills, CA.  It maintains sales offices across the United States and has foreign subsidiaries, which are separate and distinct corporate entities, in Australia, Netherlands, Brazil, Canada, New Zealand, Austria, Germany and the United Kingdom.  ReachLocal UK is currently in administration and is winding down its business.

13.     ReachLocal and its customers enter into contracts which govern the sale of ReachLocal's bundled services, including 1) placement of PPC advertisements with search advertising publishers, including Google, Bing and Yahoo!, 2) management and optimization of ad campaigns, 3) call recording that allows customers to listen to the calls generated by their campaigns, and 4) support and hands on service from ReachLocal's online marketing team. The contracts inform each client that their budget covers more than just the cost of placing PPC ads.

14.     PPC advertising is a form of online marketing where customers pay search engine marketers to present internet users with their advertisements in response to specific keyword searches. The customer is only charged a fee if the internet user actually clicks on the advertisement and is directed to the customer's website. ReachLocal works with its clients to determine the keyword phrases that are most likely to result in leads.  ReachLocal uses its proprietary platform, which includes call and email/form tracking, to optimize its clients' marketing campaigns around actual leads (i.e., phone calls and email/form submissions from potential customers) rather than just clicks.

15.     The amount of each client's budget that is used to purchase PPC ads varies due to a number of factors, including campaign size, location, and vertical. ReachLocal works with its clients to come up with the right media profile for their business and goals. ReachLocal's U.S. clients are provided with regular reports regarding the performance of their media campaigns.

**ReachLocal's Customer Lists Are Protected Trade Secrets**

16.    Worldwide, ReachLocal and its affiliates have relationships with over 17,000 businesses. Over the past ten years, ReachLocal has spent substantial time and expense to identify and develop its customer database. Specifically, ReachLocal hired several hundred salespeople at great expense to form and cultivate ReachLocal's relationships with its clients.  ReachLocal also entered into contractual relationships with partners and affiliates as another way to recruit customers. ReachLocal's customer list has independent commercial value, exceeding $75,000, and gives ReachLocal a competitive edge because it is not readily available to ReachLocal's competitors.

17.    ReachLocal implements numerous security protocols to maintain the confidentiality of its customer information, which information includes identity and contact information of its customers as well as details regarding each client's business needs and advertising history. ReachLocal's personnel policies specifically state the customer information is proprietary. Its employees are advised to maintain confidentiality of the client lists and are required to sign non-disclosure agreements, which ReachLocal enforces vigorously.  The information is maintained on a secure, password protected computer database.

**PPC Claims' Campaign Of Harassment Against ReachLocal**

18.    PPC Claims' sole business appears to be aggressively encouraging and facilitating unsubstantiated or frivolous court claims against online marketing service providers like ReachLocal.  Until recently, PPC Claims focused its efforts on the UK marketplace, specifically targeting ReachLocal UK.  PPC Claims' website provides: *"We work in tandem [sic] with some of the most established Law Firms and Barristers in the UK to help bring successful claims against companies that have either mis-sold or mis-managed paid search services to UK businesses."* On information and belief, PPC Claims works on a contingency basis, charging 25% of all settlements or other compensation derived from their claims.

ReachLocal is unaware whether PPC Claims has actually recovered any settlement money for any client.

19.     Cassidy is the public face of PPC Claims.  On its behalf, Cassidy purports to protect the public against online marketing abuse, but at least one government agency has determined that the public must be protected from Cassidy himself.  On October 27, 2010, Britain's Insolvency Service imposed an 11-year directorship disqualification on Cassidy following an investigation into the compulsory liquidation of two companies for which he served as a director.    See Disqualification Details, Exhibit 8, p.44.  *The Insolvency Service is the agency in charge of administering the insolvency regime in Britain. When Cassidy was disqualified in 2010, The Insolvency Service issued a press release regarding the case, stating that the investigation found Cassidy had deliberately confused and misled the public in a number of ways.  See Press Release, Exhibit 9, p.*45. Commenting on the case, Stephen Speed, Chief Executive of The Insolvency Service said, *"The Insolvency Service is determined to come down hard on directors of [sic] who set out to rip off the public by deliberately misrepresenting what they can offer the consumer." Id.*, p.46.

20.     Despite being disqualified as a director, Cassidy appears to be directly or indirectly involved in managing PPC Claims. On information and belief, Cassidy is the beneficial owner of 50% of PPC Claims.  He possesses a 50% ownership interest in Trafiki Limited ("Trafiki") – the parent company and sole shareholder of PPC Claims.  Furthermore, although PPC Claims has appointed two directors since its inception, on information and belief, for a period of time, the only director of the company was Cassidy's 66-year-old mother, and there is no indication from the visible activities of the company that anyone other than Cassidy is managing the business.  Cassidy's LinkedIn profile states that he is a "Claims Handler" at PPC Claims and describes his job as "Helping companies claim back money from rogue third party Google AdWords sellers," but elsewhere on LinkedIn, he has

described his role as the "Head of Operations" at PPC Claims. On information and belief, Cassidy is in breach of his disqualification undertakings by virtue of his management role and activities on behalf of PPC Claims.

21.   Cassidy is prominently featured on PPC Claims' website as the author of numerous "News" stories that detail alleged PPC abuses, tout PPC Claims' alleged successes and invite readers to let PPC Claims help them bring their own claims. More than half of these posts pertain to ReachLocal UK.

22.   On behalf of PPC Claims, Cassidy also utilizes online networking websites like LinkedIn to recruit clients and connect with former ReachLocal employees who may be interested in assisting PPC Claims.

23.   Although ReachLocal UK and ReachLocal are separate and distinct entities that are independently managed and operate in different countries, Cassidy often makes no distinction between the two companies in his posts.  *See e.g.*, Exhibits 3, pp.29-30 and 4, p.32 (screenshots from PPC Claims website).  His failure to do so is deceptive and misleading because he implies, and in some cases expressly asserts, that ReachLocal UK and ReachLocal follow the same policies and practices – which is not true. For example, referring to claims brought by clients in the UK, Cassidy's posts include numerous disparaging allegations that ReachLocal deceives its customers and manipulates their data so as to hide its margins.

24.   In 2015, ReachLocal UK is currently in administration and announced it is winding down its business.  PPC Claims was quick to post an article on its website questioning whether Paul Liascos, Managing Director of ReachLocal UK, had a nefarious motive for closing ReachLocal UK's doors, *"Could it be the millions of pounds worth of claims he has left outstanding?  The countless clients that have been Mis-Sold AdWords by Paul and his sales staff?  Sales staff that were unwittingly trained to sell Google AdWords as a proposition instead of what it actually was?  A platform that manipulates data to appear that the money is being spent on AdWords?"*  ReachLocal UK Enter Administration.  Exhibit 7, p.41

(screenshot from PPC Claims website).

25.      PPC Claims went a step further, removing the speculative qualifiers from its allegations when it posted a comment on Streetfightmag.com (an internet publication which covers advancements in the field of online marketing).  PPC Claims wrote: *"Reachlocal UK was shut down in part due to the fact that they had millions of pounds worth of claims against them.  The company's sales people (or the good ones) then left to start their own companies when they realised that the UK market was about to be exposed to what ReachLocal UK actually do with budgets."* Exhibit 2, p.24.   ReachLocal denies the truth of these speculative assertions.

26.      In the same post, PPC Claims turned its sights towards to ReachLocal in the United States writing, *"The US and Australian markets are still unaware BUT fortunately we have the entire list of clients and will be starting a campaign in January to inform them of what is happening to their budgets.  Sharon Rowlands [ReachLocal's Chief Executive Officer] has a lot of problems on the horizon which she has refused to address."  Id.*  PPC Claims' comments in Streetfightmag.com were false and misleading with the intended purpose and effect of damaging ReachLocal's reputation in the United States within the global online marketing community.

27.      Moreover, PPC Claims did not obtain ReachLocal's customer list through any authorized means.  Since making the stunning admission that it acquired ReachLocal's trade secret information, PPC Claims has made good on its threat to use that information against ReachLocal.   PPC Claims has begun contacting ReachLocal's clients in the United States.   In an email message to Confidential Client No. 1, Cassidy wrote: *"Were you aware of the margins Reachlocal hide [sic] from clients?  Take a look, would be interested to see if you know how they operate."*  Cassidy included a link to his article entitled "Revealed The Raw Data Behind The ReachLocal Platform" on the PPC Claims website. While the article

refers to ReachLocal UK, Defendants deliberately misattribute the content of the article to apply to ReachLocal U.S. Confidential Client No. 1 contracted with ReachLocal in the past, but does not currently have a service agreement in place with ReachLocal.

28.    Confidential Client No. 2 has an existing contract for online marketing services with ReachLocal.  Cassidy contacted Confidential Client No. 2 through its online chat portal and to speak with someone in charge about "ReachLocal" and the "hidden fees."

29.    Defendants have also used Cassidy's LinkedIn account to wage their campaign against ReachLocal.  Cassidy's profile on LinkedIn includes links to the deceptive and misleading "news" stories about ReachLocal that are posted on PPC Claims' website and states that Cassidy is *"Particularly interested in companies that have used Hibu and ReachLocal and were misled into advertising.  Also interested in connecting with any ex-ReachLocal Internet Marketing Consultants or Hibu Salespeople*." Cassidy has sent his profile to ReachLocal's clients, employees and peers in the online marketing industry via requests to "connect."

30.    Defendants have even sent harassing emails directly to ReachLocal's employees.  For example, in an email dated January 10, 2016 to Alan Moore, Internet Marketing Consultant in Baltimore, Maryland, Cassidy wrote, *"As you know ReachLocal UK is in administration and has left thousands of companies out of pocket.  We are trying to help companies that were mis-sold adwords.  Do you tell your clients (the ones that have endorsed you for example) about the hidden margins or does Reachlocal US work in a different way?"*

31.    Via LinkedIn, Cassidy wrote to ReachLocal's Chief Executive Officer, Sharon Rowlands, who works and resides in California, *"[W]hat about the clients that have been left out of pocket Sharon?  Everyone knows the real reason UK shut down… America yet to find out about the margins?"*

32.    On information and belief, PPC Claims' attacks against ReachLocal are part

of a larger plan to expand its services and enter the United States market as a direct competitor to ReachLocal. In a recent LinkedIn post, PPC Claims announced *"We are looking for a US Based AdWords Agency To Run Campaigns For Our Clients." See* Exhibit 10, pp. 48-49. In the post, PPC Claims specifically seeks to partner with ReachLocal competitors located in Woodland Hills, CA and other markets around the United States where ReachLocal offices. *Id.*

33.     Unless they are enjoined, Defendants will continue their campaign against ReachLocal in the United States and abroad. Confirming this fact, Cassidy warned a legal representative of ReachLocal's German affiliate that Defendants would not be stopped from creating a "*real storm*" in the United States.

34.     ReachLocal has been forced to expend substantial time and resources to investigate and respond to Defendants' unlawful activities.   This includes numerous hours expended by ReachLocal's chief leadership team (including its Chief Executive Officer), marketing team and legal team. Specifically, ReachLocal has contacted Confidential Clients Nos. 1 and 2, to assuage their concerns and explain Defendants' deceptive and misleading allegations.   ReachLocal has been forced to respond to Defendants' public comments and private attempts to spread their allegations against ReachLocal on Streetfightmag.com and in other industry forums. Finally, ReachLocal has spent time and resources addressing Defendants' claims internally so that it may protect its employees against Defendants' harassment, maintain company morale and prevent further misappropriation of its trade secrets.

## **FIRST CLAIM FOR RELIEF**

### **(Trade Secret Misappropriation Against All Defendants)**

35.     ReachLocal incorporates by reference each of the foregoing and subsequent allegations in the Complaint as though fully set forth herein.

36.     ReachLocal built its customer database by expending ingenuity, time, labor and expense over a period of many years. The list of ReachLocal's customers is

1   not readily available to the public.  It has independent commercial value by virtue
2   of the steps ReachLocal has taken to ensure its confidentiality.  Accordingly, the
3   customer list constitutes a trade secret as defined by the USTA.

4   37.    Defendants PPC Claims and Cassidy have asserted that they are in
5   possession of ReachLocal's entire customer list.  ReachLocal did not implicitly or
6   explicitly authorize the dissemination of its customer list to Defendants.  To the
7   contrary, ReachLocal has gone to great lengths to maintain the confidentiality of its
8   list and prevent its disclosure to unauthorized persons, whether by accident or by
9   intentional transfer.

10   38.    Defendants PPC Claims and Cassidy's possession of ReachLocal's trade
11   secrets is wrongful.  Defendants knew or had reason to know that the means by
12   which they acquired ReachLocal's customer list were improper.

13   39.    Defendants PPC Claims and Cassidy are waging an ongoing campaign
14   against ReachLocal, using ReachLocal's trade secrets to identify and contact
15   ReachLocal's customers, disparage ReachLocal's products and encourage the
16   filing of complaints against ReachLocal.

17   40.    Defendants have also announced their intent to compete directly with
18   ReachLocal and are actively looking to partner with ReachLocal's competitors in
19   Woodland Hills, CA and other United States markets served by ReachLocal. *See*
20   Exhibit 10, p. 48.

21   41.    ReachLocal has been damaged by Defendants' conduct and will be further
22   damaged unless and until Defendants are enjoined from using ReachLocal's trade
23   secrets and required to return ReachLocal's property.

24   <u>**SECOND CLAIM FOR RELIEF**</u>

25   **(Intentional Interference With Contractual Relations Against All Defendants)**

26   42.    ReachLocal incorporates by reference each of the foregoing and subsequent
27   allegations in the Complaint as though fully set forth herein.

28   43.    ReachLocal enters into service contracts with its clients, which set forth the

agreed upon terms governing the purchase of ReachLocal's online marketing services. For example, Confidential Client No. 2 entered into a standard contract with ReachLocal on January 2, 2016 whereby Confidential Client No. 2 agreed to pay ReachLocal a set fee for online marketing services lasting six cycles.

44.     Defendants PPC Claims and Cassidy knew of ReachLocal's contractual agreements with its customers, including but not limited to Confidential Client No. 2.

45.     Defendants PPC Claims and Cassidy embarked upon a campaign intended to disrupt the performance of contracts between ReachLocal and its customers.

46.     As part of that campaign, Defendants PPC Claims and Cassidy wrongfully misappropriated ReachLocal's confidential customer lists (which are trade secrets) and used that information to contact a number of ReachLocal's clients, including Confidential Clients Nos. 1 and 2, and make deceptive and misleading representations regarding ReachLocal's products.  Defendants PPC Claims and Cassidy have also published numerous deceptive and misleading comments and articles on the internet that are directed to ReachLocal's clients and competitors with the purpose and effect of damaging ReachLocal's reputation and disrupting its contractual relations.

47.     Defendants' conduct has damaged ReachLocal.  ReachLocal has expended substantial resources to address the disruption created by Defendants' contacts with its clients, employees and the online marketing industry at large.  ReachLocal has also had to manage concerns about diminishing morale among some company employees and increasing undue stress caused to ReachLocal's chief leadership team.

48.     Defendants' conduct was despicable and subjected ReachLocal to unjust hardship in conscious disregard of ReachLocal's rights.  Defendants conduct was malicious, fraudulent and oppressive.  Accordingly, ReachLocal is entitled to an award of punitive or exemplary damages in an amount sufficient to punish

Defendants and make an example of them in order to deter similar conduct in the future.

## THIRD CLAIM FOR RELIEF

### (Intentional Interference With Prospective Economic Advantage
### Against All Defendants)

49.     ReachLocal incorporates by reference each of the foregoing and subsequent allegations in the Complaint as though fully set forth herein.

50.     ReachLocal was in an economic relationship with its existing and prospective clients that would have resulted in a reasonably probable future economic benefit or advantage to ReachLocal.

51.     Defendants PPC Claims and Cassidy engaged in wrongful conduct through the wrongful misappropriation of ReachLocal's customer list (which is a trade secret) and by making deceptive and misleading statements directly to ReachLocal's current, former and prospective customers and on websites frequented by ReachLocal's customers and competitors. Defendants' statements intentionally encourage existing and former clients to file complaints against ReachLocal, switch to a new online marketing service provider and/or decline to renew contracts with ReachLocal.

52.     Defendants knew of ReachLocal's prospective relationships and intended to disrupt them.

53.     PPC Claims and Cassidy acted intentionally for the purpose of depriving ReachLocal of property and legal rights and damage ReachLocal's reputation. ReachLocal was in fact harmed as a direct result of Defendants' conduct. ReachLocal has expended substantial resources to address the disruption created by Defendants' contacts with its clients, employees and the online marketing industry at large.  ReachLocal has also had to manage concerns about diminishing morale among some company employees and increasing undue stress caused to ReachLocal's chief leadership team.

54.   PPC Claims and Cassidy's conduct was despicable and subjected ReachLocal to unjust hardship in conscious disregard of ReachLocal's rights. Defendants' conduct was malicious, fraudulent and oppressive.  Accordingly, ReachLocal is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants and make an example of them in order to deter similar conduct in the future.

## FOURTH CLAIM FOR RELIEF

### (Violation of California Business and Professions Code Section 17200 et. seq.)

55.   ReachLocal incorporates by reference each of the foregoing and subsequent allegations in the Complaint as though fully set forth herein.

56.   Defendants PPC Claims and Cassidy engaged in unfair and deceptive business practices within the meaning of California Business Professions Code §17200 through the wrongful misappropriation of ReachLocal's customer list (which is a trade secret) and by making deceptive and misleading statements to ReachLocal's prospective customers and the industry at large regarding ReachLocal's products and services.

57.   PPC Claims and Cassidy acted intentionally for the purpose of depriving ReachLocal of property and legal rights and damaging ReachLocal's reputation. ReachLocal was in fact harmed as a direct result of Defendants' conduct.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Relief Against Cassidy)

58.   ReachLocal incorporates by reference each of the foregoing and subsequent allegations in the Complaint as though fully set forth herein.

59.   An actual, substantial and continuing controversy exists between ReachLocal and Cassidy regarding his right to act as a director on behalf of PPC Claims in the United States.

60.   Cassidy has been disqualified from acting as a director on behalf of any British company by the British Insolvency Service.

61.     Cassidy is the beneficial owner of 50% of PPC Claims and, on information and belief, is the Head of Operations of the company.

62.     On information and belief, Cassidy has been directly and indirectly managing PPC Claims in violation of his disqualification.

63.     The order of the British Insolvency service disqualifying Cassidy from acting as a director has equal for and effect with respect to Cassidy's conduct on behalf of PPC Claims in the United States.

64.     Declaratory relief with fully and finally resolve the controversy between ReachLocal and Cassidy.  Accordingly, ReachLocal is entitled to a declaration that Cassidy may not act as a director of PPC Claims in the United States.

## **PRAYER FOR RELIEF**

Based upon the foregoing allegations and claims, ReachLocal seeks the following relief:

1.  For an order requiring PPC Claims and Cassidy to cease any and all use and/or dissemination of ReachLocal's trade secrets and to return or destroy all of ReachLocal's property currently in its possession;

2.  For an injunction prohibiting PPC Claims and Cassidy from soliciting business from any of ReachLocal's customers that were identified and made known to PPC Claims and Cassidy by virtue of their misappropriation of ReachLocal's trade secrets;

3.  For a declaration that Cassidy is violating the British Insolvency Service order disqualifying him from acting as a director of any British company;

4.  For compensatory damages in an amount to be determined at trial;

5.  For punitive damages pursuant to California Civil Code § 3294 in an amount to be determined at trial;

6.  Costs and to the extent warranted by law, attorneys' fees; and

7.  For such other relief as the Court deems just and proper.

Dated: February 12, 2016                  Respectfully submitted,

                                          **BROWN NERI & SMITH LLP**

                                          By:___/s/ Amjad Khan_____
                                                Amjad M. Khan
                                                *Attorneys for Plaintiff*
                                                *REACHLOCAL, INC.*

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a jury for all issues triable by such.

Dated: February 12, 2016                         Respectfully submitted,
                                                 **BROWN, NERI & SMITH, LLP**


                                                 By: ___/s/ Amjad Khan___
                                                        Amjad Khan
                                                        *Attorneys for Plaintiff*
                                                        *REACHLOCAL, INC.*

---

**COMPLAINT**

17