Amjad M. Khan (SBN 237325)
*amjad@bnsklaw.com*
Jill R. Glennon (SBN 204506)
*jill@bnsklaw.com*
**BROWN NERI SMITH & KHAN LLP**
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980

*Attorneys for Plaintiff*
REACHLOCAL, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| REACHLOCAL, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>PPC CLAIM LIMITED, a British limited company; KIERAN PAUL CASSIDY, an individual; and DOES 1-50,<br><br>        Defendants. | Case No. 2:16-cv-01007-R-AJW<br><br>Judge: Hon. Manuel L. Real<br><br>**REACHLOCAL INC.'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT**<br><br>[Filed concurrently: Declarations of Jill Glennon and Tenlay Naliboff; Request for Judicial Notice]<br><br>Date: June 17, 2019<br>Time: 10:00 a.m.<br>Courtroom: 880 |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 17, 2019 at 10:00 a.m., or as soon after as the matter may be heard, Plaintiff ReachLocal, Inc. ("ReachLocal") will move before the Honorable Manuel L. Real, in Courtroom 880 of the above-entitled court, located at 255 East Temple Street, Los Angeles, CA, 90012, for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against Defendants Kieran Paul Cassidy ("Cassidy") and PPC Claim Limited ("PPC Claim" and together with Cassidy, "Defendants"), finding Defendants liable on all claims, permanently enjoining Defendants from engaging in the conduct proscribed by the preliminary injunction granted by this Court, awarding compensatory damages and attorneys' fees and declaring Cassidy in violation of the order of the British Insolvency Service.

This motion is based on the facts and argument set forth in the accompanying memorandum below, the declarations of Jill Glennon and Tenlay Naliboff, the Request for Judicial Notice, all pleadings and papers on file in this action, and such further evidence and argument as may be presented at or before the hearing in this matter.

Dated: May 10, 2019         **BROWN NERI SMITH & KHAN, LLP**

By:    /s/ Amjad M. Khan
        Amjad M. Khan

*Attorneys for Plaintiff*,
ReachLocal, Inc.

---

NOTICE OF AND MOTION FOR DEFAULT JUDGMENT
1

## **TABLE OF CONTENTS**

I.   **INTRODUCTION** ............................................................... 1

II.  **RELEVANT BACKGROUND FACTS** .................................... 2

    **A. Defendants Contacted ReachLocal's CEO, Claimed they had ReachLocal's Client Database and Carried Out Their Threat to Use the Database to Disrupt ReachLocal's Business.** ............... 2

    **B. Defendants Disrupted ReachLocal's Client Relationships.** ......... 6

    **C. ReachLocal's Attorneys' Fees.** .................................................. 7

III. **ARGUMENT** .................................................................... 8

    **A. The Court's Order Striking Defendants' Answer and Ordering Entry of Default.** ........................................................ 8

    **B. Legal Standard for Default Judgment.** ......................................... 8

    **C. The Requirements of Jurisdiction and Notice are Satisfied.** ........ 9

    **D. *Eitel* Factors Weigh in Favor of Granting Default Judgment.** .... 9

        1.  Factor 1: ReachLocal Will Be Seriously Prejudiced if Default Judgment is not Granted in Its Favor. ......................................... 9

        2.  Factors 2 and 3: The Merits of ReachLocal's Substantive Claims and Sufficiency of its Complaint. ................................... 10

            a)  *Trade Secret Misappropriation.* .................................. 10

                1)  ReachLocal's Client Database is a Trade Secret. .... 11

                2)  ReachLocal Presented Strong Circumstantial Evidence of Misappropriation. ............................... 12

            b)  Intentional Interference with Contractual Relations. ...... 13

            c)  Intentional Interference with Prospective Economic Advantage. ................................................................ 14

            d)  Violation of Business & Professions Code § 17200. ...... 15

            e)  Attempted Extortion Claim. ........................................ 15

            f)  Declaratory Relief. ..................................................... 16

        3.  Factor 4: ReachLocal's Monetary Demands are Reasonable. .... 16

        4.  Factor 5: There is no Dispute Regarding Material Facts ........... 16

        5.  Factor 6: The Default is not Due to Excusable Neglect. ........... 17

6. Factor 7: The Policy Favoring Resolution on the Merits............ 18

7. Summary of the *Eitel* Factors....................................................... 18

**E. Remedies.**.............................................................................................. 19

1. Injunctive Relief............................................................................ 19

2. Monetary Damages. ...................................................................... 19

3. Attorneys' Fees. ............................................................................ 20

**IV.   CONCLUSION** ........................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Abba Rubber Co.*,
235 Cal. App. 3d at fn 9 ............................................................... 13

*Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*,
226 Cal.App.4th 26 (Ct. App. 2014) ............................................. 12

*Am. Credit Indem. Co. v. Sacks*,
213 Cal. App. 3d 622 (1989) ............................................. 20, 21, 22

*Craigslist, Inc. v. Naturemarket, Inc.*,
694 F.Supp.2d 1039 (N.D. Cal. 2010) ..................................... 11, 20

*DVD Copy Control Assn. v. Bunner*,
116 Cal.App.4th 241 (Ct. App. 2004) ........................................... 12

*Earthquake Sound Corp. v. Bumper Indus.*,
352 F.3d 1210 (9th Cir. 2003) ....................................................... 22

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) .................................................. 2, 10

*Fireworks Spectacular, Inc. v. Premier Pyrotechnics, Inc.*,
147 F. Supp. 2d 1057 (D. Kan. 2001) ........................................... 13

*Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd.*,
*("Elec. Frontier")*, 290 F. Supp.3d 923 (N.D. Cal. 2017) ............... 11

*Gable-Leigh, Inc. v. N. Am. Miss*,
2001 WL 521695 (C.D. Cal. 2001) ............................................... 14

*Geddes v. United Fin. Grp.*,
559 F.2d 557 (9th Cir. 1977) .................................................. passim

*GlobalTranz Enterprises Inc. v. Shippers Choice Glob. LLC*,
No. CV-16-04038-PHX-ROS, 2017 WL 2841224 (D. Ariz June 2, 2017) ........ 9

*GlobeSpan, Inc. v. O'Neill*,
151 F.Supp.2d 1229 (C.D. Cal. 2001) ........................................... 12

*Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*,
556 F. Supp. 2d 1122 (E.D. Cal. 2008) ......................................... 15

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ...................................................................... 22

*Klamath-Orleans Lumber, Inc. v. Miller*,
  87 Cal. App. 3d 458 (Ct. App. 1978) ..................................................12

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal.4th 1134 (2003) ........................................................................16

*MedioStream, Inc. v. Microsoft Corp.*,
  869 F.Supp.2d 1095 (N.D. Cal. 2012) ................................................12

*Monex Deposit Co. v. Gilliam*,
  680 F. Supp. 2d 1148 (C.D. Cal. 2010) ..............................................17

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ................................................................22

*Pyro Spectaculars N., Inc. v. Souza*,
  861 F. Supp. 2d 1079 (E.D. Cal. 2012) ..............................................13

*Quelimane Co. v. Stewart Title Guaranty Co.*,
  19 Cal.4th 26 (1998) ...................................................................... 15, 16

*Ringold Corp. v. Worrall*,
  880 F.2d 1138 (9th Cir. 1989) .........................................................9, 10

*San Jose Constr., Inc.*,
  155 Cal.App.4th ..................................................................................13

*TeleVideo Sys., Inc. v. Heidenthal*,
  826 F.2d 915 (9th Cir. 1987) ...........................................................3, 10

**Statutes**

Cal. Civ. Code § 3426.2(a) ....................................................................20

Cal. Civ. Code § 3344 ...........................................................................11

Cal. Civ. Code § 3294 ...........................................................................11

Cal. Civ. Code § 3426.2 .........................................................................11

Cal. Civ. Code § 3426.3 .........................................................................11

Cal. Bus. and Prof. Code § 17200 .........................................................16

Fed. R. Civ. P. 8(b)(6) ...........................................................................10

Fed. R. Civ. P. 55(b)(2) .................................................................. 2, 9, 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Plaintiff ReachLocal, Inc. ("ReachLocal") moves for Default Judgment ("Motion") after Defendants PPC Claim Limited ("PPC Claim") and Kieran Paul Cassidy (collectively, "Defendants"), having engaged in a costly scorched earth litigation strategy for many months, entirely abandoned their defense to ReachLocal's Amended Complaint for (1) trade secret misappropriation, (2) intentional interference with contractual relations, (3) intentional interference with prospective economic advantage, (4) violation of California business and professions code § 17200, (5) attempted extortion and (6) declaratory relief.

The Ninth Circuit identified six factors for the Court to consider in determining whether to exercise its discretion under Federal Rule of Civil Procedure 55(b)(2) to grant default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  All six of those so-called "*Eitel* factors" weigh in ReachLocal's favor where: (1) ReachLocal would be seriously prejudiced if this Court does not intervene, (2) ReachLocal's substantive claims are meritorious as demonstrated by the allegations in the Complaint, the evidence of record and the preliminary injunctions granted by this Court and the Court of Appeals, (3) the causes of action are sufficiently pled in that each element of ReachLocal's claims is alleged in the Amended Complaint, (4) the sum of money and the injunctive relief requested is reasonable in light of the Defendants' misconduct, (5) the possibility of a dispute concerning material facts is low where the parties fully briefed two substantive motions that were under submission when default was entered, (6) Defendants' failure to appear is not the result of excusable neglect, and (7) the strong policy favoring decisions on the merits does not favor Defendants, where they abandoned briefed motions for summary judgment and Rule 11 sanctions, rather than resolving them.

ReachLocal hereby requests that Defendants be adjudged liable on each of ReachLocal's claims, that the preliminary injunction be made permanent, that

ReachLocal be awarded monetary damages in the amount of its lost profits and the value of the resources ReachLocal devoted to respond internally and externally to Defendants' misconduct, that this Court declare Cassidy in violation of the British Insolvency Service order disqualifying him from acting as a director of PPC Claim and for the award of ReachLocal's attorneys' fees.

## II.   RELEVANT BACKGROUND FACTS[1]

### A.   Defendants Contacted ReachLocal's CEO, Claimed they had ReachLocal's Client Database and Carried Out Their Threat to Use the Database to Disrupt ReachLocal's Business.

ReachLocal's history with Defendants in the U.K. was the backdrop for the events giving rise to this litigation.  ReachLocal first learned of Defendants through their attempts to build and then settle class action claims against ReachLocal's U.K. subsidiary. Declaration of Jill Glennon in Support of ReachLocal's Motion ("Glennon Decl.") Ex. A, p. 3 (¶ 7), Ex. I, p. 6 (¶ 18) and pp. 46-48 (110:117-111:24).[2]  When those claims did not result in a big payday for Defendants, they turned their attention to ReachLocal's U.S., German and Australian markets. Towards the end of 2015, PPC claim posted a comment to an article about ReachLocal on streetfightmag.com, writing: "we have the ***entire list of [ReachLocal] clients*** and will be starting a campaign in January to inform them of what is happening to their budgets." Glennon Decl. L, p. 2 (¶ 3) and p.11 (emphasis added).  Less than one month later, Cassidy wrote to ReachLocal's CEO, Sharon Rowlands, *repeating* the same threat:

---

[1] In making its decision, the court takes all factual allegations in the complaint, except those relating to damages, as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

[2] ReachLocal has only provided excerpts from the record that are cited by this Motion for brevity. ReachLocal is requesting judicial notice of those entire records cited, which are on the docket and may provide the Court additional context. Where applicable, ReachLocal also provides cross-references to the seal docket.

> "Sharon, You have until the end of the week to come back to me, I remain open to meeting you in person to see if we can come to an arrangement/ agreement.  I have the *entire reachlocal [sic] client and ex-client database* and will start informing them of the hidden margins you use as a business. We will start with Germany and then move onto the U.S. and Australia within a few weeks.  You have already seen the problems that will arise, unhappy clients, lawsuits and unhappy sales staff.

Glennon Decl. Ex. A, pp. 8-9 (¶ 32) and p. 10.  Defendants have never disclaimed the above threats.

ReachLocal took Defendants' threat seriously and began to prepare for the onslaught of negative propaganda. Glennon Decl. Ex. I, p. 6 (¶ 8) and pp. 54-55 (120:5-121:21).  Sharon Rowlands worked with ReachLocal's General Counsel, Tenlay Naliboff, and Chief Strategy Officer, Paras Maniar, to develop ReachLocal's internal and external response to Defendants' campaign. Glennon Decl. Ex. G, p. 2 (¶¶ 2-3), Ex. H, Ex. J, p. 2 (¶ 3), Ex. L, p. 3(¶ 6).  On January 10, 2016, a communication from Ms. Rowlands was sent to all North American ReachLocal employees, explaining who Defendants were and providing talking points for the employees to use in the event Defendants contacted their clients.  Glennon Decl. Ex. J, p. 2 (¶ 3) and pp. 7-8. ReachLocal directed its employees to inform Tenlay Naliboff and Amber Seikaly (in marketing and public relations) if their clients reported receiving communications from Defendants and to forward any emails or other documentation to a central file.  *Id.*

ReachLocal also engaged outside litigation counsel, Brown, Neri, Smith & Khan LLP ("BNSK"), to provide legal advice regarding ReachLocal's potential legal claims, including trade secret misappropriation. Glennon Decl. L, pp. 3-4 (¶¶ 8-9).  In January 2016, ReachLocal had approximately 17,000 current clients and 75,000 ex-clients. Glennon Decl. Ex. B, p. 2 (¶ 4) [Seal Dkt. 101-2, pp. 86-87] and Ex. E, p. 3 (¶ 5).  Information for these current and former clients was stored on a secure password-protected database (the "Database"). Glennon Decl. Ex. B, p. 2 (¶ 4).  ReachLocal created the Database over the previous ten years at considerable expense, and the Database is subject to policies and procedures designed to prevent its unauthorized or accidental disclosure. Glennon Decl. Ex. B, p. 2 (¶ 4), Ex. E, p.

2 (¶ 3), Ex. F, p. 2 (¶ 3) and pp. 5-22.  ReachLocal knew that a subset of its clients (approximately 4% of the Database) could be readily identified through publicly available means, but Defendants claimed to possess the entire *current and former* Database, which was not possible through proper means. Glennon Decl. Ex. B, pp. 2-4 (¶¶ 5-12) [Seal Dkt. 86-1, pp. 42-44].

As anticipated, Defendants carried through on their threats to contact ReachLocal's clients.  In January and early February, ReachLocal collected reports from former and current clients in the U.S., who had received disparaging communications about ReachLocal's services from Defendants.  Glennon Decl. Ex. L, pp. 3-4 (¶ 9) and pp. 13-23.  On February 11, 2016, ReachLocal filed a Complaint against Defendants, which included claims for trade secret misappropriation and tortious interference with contract. [Dkt. 1].

On March 11, 2016, ReachLocal filed an Amended Complaint, adding claims for attempted extortion and declaratory relief. [Dkt 16].  Paragraph 24 of the Amended Complaint states, "A subset of ReachLocal's clients may be identified using Internet searches.  However, ReachLocal believes there is no way to replicate the entire client database (or former client database) using such means."  *Id*. ¶ 9.  This allegation has been validated by sworn testimony from ReachLocal's Chief Products Officer, Kris Barton. *See* Glennon Decl. Exs. B, p. 2 (¶ 4).

Instead of slowing Defendants down, the Amended Complaint galvanized them.  Reports from ReachLocal clients began pouring in from the U.S., Canada and Australia.  ReachLocal suspected that Defendants were using an email marketing service to send automated emails to untold numbers of ReachLocal clients. Glennon Decl. Ex. L, pp. 6-7 (¶¶ 17-19) and pp. 13-157 [Seal Dkt. 125-1]. Some clients reported receiving multiple emails in a week.  Many clients expressed distress:

- Client 7 wrote to ReachLocal: "I forwarded this email I received (below) last week and was wondering if you had any insight into these accusations";

- Client 8 wrote: "Care to explain yourself?  First pause and marinate for a second on the irony of her clicking on a reachlocal ad to get to our site to ask us to sue reach local…";

- Client 11 wrote to Sharon Rowlands: "Please explain why we were charged ~A$28,000 (ex GST) for our campaign when your own reporting indicates that only A$12,546.04 was actually only spent by ReachLocal";

- Client 36 wrote: "???????";

- Client 16 wrote: "Do I need to be worried about this?" (*Id.*, p. 67);

- Client 37 wrote: "Whaa???:";

- Client 32 wrote: "can you please explain why I am getting emails saying only half the money I spent with you went to my ppc campane [sic].  I spent thousands of dollars.  And now virtually out of business because of the lack of clients I got from PPC."

*Id.*

By the time ReachLocal moved for a preliminary injunction, ReachLocal had collected reports from a total of 30 North American and Australian clients and former clients who Defendants contacted. Glennon Decl. Ex. A, pp. 5-7 (¶¶ 16-26). ReachLocal's agency partner, Compass Point, reported that one of those clients, InLight Gobos ("InLight"), was considering cancelling its contract. Glennon Decl. Ex. I, pp. 5-6 (¶¶ 11-16), pp. 11-25 and pp. 49-53 (115:22-119:3) [Seal Dkt. 125-1], Ex. J, p. 3(¶ 5).[3]

After the Court granted the Preliminary Injunction, ReachLocal collected more voluntary reports from its clients[4] and learned that InLight cancelled its

---

[3] ReachLocal initially reported a second client, GoMow, cancelled as a result of Defendants' communications.  After engaging in discovery, ReachLocal determined it would not seek lost profits from the cancellation of the GoMow contract.  [Naliboff Decl. Exs. A and B (ReachLocal's Supplemental AEI Rule 26 Initial Disclosures).]

[4] Although these reports were made after the injunction was granted, they involved communications received prior to the imposition of the TRO.

contract. Glennon Decl. Ex. I, pp. 5-6 (¶¶ 11-16) and pp. 11-25, 42, Ex. L, p. 8 (¶ 27). ReachLocal served Initial Disclosures on July 15, 2016.   Declaration of Tenlay Naliboff in Support of ReachLocal's Motion ("Naliboff Decl.") ¶2 and Ex. A. ReachLocal disclosed its computation of damages, which was based on lost profits from the cancelled contract and increased costs associated with the time ReachLocal spent to address and mitigate the harm from Defendants' communications. *Id*.

**B.    Defendants Disrupted ReachLocal's Client Relationships.**

Until August 29, ReachLocal suspected that Defendants contacted far more of its customers than the 35 that voluntarily reported receiving emails from PPC Claim. Glennon Decl. Ex. I, p. 7 (¶ 18) and pp. 49-53 (115:22-119:14) [Seal Dkt. 125-1]. Through discovery, ReachLocal confirmed its reasonable suspicion.   ReachLocal now knows that Defendants sent emails to over 700 addresses associated with ReachLocal clients through an email marketing service called iContact. Glennon Decl. Ex. D, pp. 8-9 (¶ 28).

Using the iContact information, ReachLocal has identified two more clients that terminated their contracts with ReachLocal because of the emails they received from Defendants. Glennon Decl. Ex. K, pp. 6-7 (¶¶ 22, 29), pp. 10-12 and 50-52. A. R. testified: "When I read the emails from PPC Claim and learned there were many other companies having issues with ReachLocal, I was assured that P.C. was not alone.   The emails solidified my concerns about continuing the contract for ReachLocal's services and helped to finalize my decision to cease P.C.'s contractual relationship with ReachLocal." Glennon Decl. Ex. K, pp. 6-7 (¶ 22) and pp. 10-12. B.P. of G. S. testified that he had the same reaction to Defendants' emails, which arrived as he was in the process of evaluating ReachLocal's services.   Glennon Decl. Ex. K, pp. 6-7 (¶ 29) and pp. 50-52.

ReachLocal calculates its lost profits from the cancelled contracts to be

$25,187.40.  Naliboff Default Decl. ¶¶ 2-5 and Exs. A-B.[5]  Those calculations were disclosed in ReachLocal's Supplemental Attorneys' Eyes Only Initial Disclosures ("Supplemental AEI Disclosures").  *Id*.  ReachLocal also calculates the value of the resources devoted to the retention of clients who reported receiving communications from Defendants to be $40,903.85.  Naliboff Default Decl. ¶6 and Exs. A-B.

### C. ReachLocal's Attorneys' Fees.

Over the past three years, ReachLocal incurred $578,512.04 in attorneys' fees from this litigation.  Glennon Default Decl. ¶¶ 26, 30.  A substantial portion of ReachLocal's fees totaling $169,312.20 were incurred defending Defendants' premature motion for summary judgment ("MSJ") and frivolous Rule 11 motion. Glennon Decl. ¶ 26.  ReachLocal sought to recover $41,200 in attorneys' fees for its defense of Defendants' Rule 11 motion. [Dkt. 123, p. 25].  The MSJ and Rule 11 motion were under submission at the time of default.

ReachLocal also incurred $178,739.04 in attorneys' fees associated with ReachLocal's efforts to obtain discovery from Defendants. Glennon Decl. ¶ 26. ReachLocal served written discovery on Defendants and spent $20,070 in connection with its motion to compel further responses to those requests. [Dkt. 111, p. 5].  ReachLocal also defended the deposition of its CEO, interviewed and deposed clients affected by Defendants emails, subpoenaed Google for information related to this case, travelled to London to take Defendants deposition and moved for sanctions in the amount of $15,100 when Cassidy failed to appear at his deposition and was obstructive during the deposition of PPC Claim. Glennon Decl. ¶ 26 and [Dkt. 134, p. 15].

ReachLocal also moved to enforce the TRO, PI, and Protective Order in this Action multiple times when Cassidy violated their terms at a cost of $64,323.68. Glennon Decl. ¶ 26 and [Dkts. 162 and 174].  ReachLocal spent $36,150 on its

---

[5] Pursuant to the Stipulated Protective Order between the parties [Dkt. 76], ReachLocal applied to seal information in its filings to protect its clients' identity.

motion for reconsideration of this Court's dismissal of its case for want of prosecution and $78,694 on its successful appeal of the same.  Glennon Decl. ¶ 26.

## III.   **ARGUMENT**

### A.   **The Court's Order Striking Defendants' Answer and Ordering Entry of Default.**

By order of this Court on April 12, 2019, Defendants' Answer [Dkt. 196] was stricken from the record and the clerk was ordered to enter default against PPC Claim and Kieran Paul Cassidy.  The Court's Order cited Rule 55(a) as the basis for its Order.  The Ninth Circuit has previously held that a Court must have wide latitude to enter default pursuant to Rule 55(a) where defendant fails to participate in the litigation. *Ringold Corp. v. Worrall*, 880 F.2d 1138, 1141-42 (9th Cir. 1989).

### B.   **Legal Standard for Default Judgment.**

After default has been entered against a party, a district court may grant an application for default judgment in its discretion. *See* Fed. R. Civ. P. 55(b)(2). If the court is satisfied that jurisdiction is proper and that service of process upon the defendant was adequate, it then considers several factors in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In making its decision, the court takes all factual allegations in the complaint, except those relating to damages, as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

## C.     The Requirements of Jurisdiction and Notice are Satisfied.

This Court's jurisdiction and the notice requirements are satisfied where Defendants answered ReachLocal's Amended Complaint [Dkt. 36] and engaged in discovery and motion practice in this Court for nearly two years before their counsel withdrew.  Neither Defendant made any further appearances in this Action.  PPC Claim is currently unrepresented, but PPC Claim is responsible for keeping track of the progress of the case and to enter the appearance of replacement counsel. *Ringold*, *supra*, 880 F.2d at 1141-42 ("Even before appellants' counsel withdrew, they had a duty to keep track of the progress of the case… Once counsel withdrew, their duty to keep track their lawsuit became that much greater.").  Actual notification of PPC Claim is established because Cassidy receives all ECF notifications.  He is the majority shareholder and Head of Operations at PPC Claim.  Amend. Compl. ¶¶ 15, 27.  The Notice of this Motion was electronically filed, thereby providing sufficient notice to both Defendants under Federal Rule 55(B)(2).

Defendants also had notice of the nature and amount of the damages claimed by ReachLocal.  The Amended Complaint seeks compensatory damages and injunctive relief, punitive damages and attorneys' fees, which are authorized by the USTA and California's Civil Code.  Cal. Civ. Code §§ 3426.2-3426.3 (USTA); Cal. Civ. Code §§ 3344 and 3294 (compensatory and punitive damages).  ReachLocal disclosed its calculation of its compensatory damages in its initial disclosures.  Naliboff Default Decl. Exs. A-B.  The total amount of ReachLocal's attorneys' fees could not be determined until the litigation was completed; however, Defendants did know the amounts of attorneys' fees and costs ReachLocal incurred in connection with its discovery motions and its defense of the Rule 11 Motion.

## D.     *Eitel* Factors Weigh in Favor of Granting Default Judgment.

### 1.     Factor 1: ReachLocal Will Be Seriously Prejudiced if Default Judgment is not Granted in Its Favor.

The first *Eitel* factor weighs in favor of ReachLocal where Defendants have expressed their desire to resume their campaign of harassment against ReachLocal.

Glennon Decl. Ex. N, p. 2 (¶ 4) and pp. 11-12.  Without Court action, ReachLocal will not be compensated for its loss and Defendants will not be enjoined by the preliminary injunction, resulting in more harm to ReachLocal's business.

### 2.  Factors 2 and 3: The Merits of ReachLocal's Substantive Claims and Sufficiency of its Complaint.

The second and third *Eitel* factors, in combination, ask whether ReachLocal's Amended Complaint is sufficient and whether the allegations in the Amended Complaint, along with other judicially noticed facts or evidence augmented to the record, show that ReachLocal is likely to succeed on the merits. *Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd*. ("*Elec. Frontier*"), 290 F. Supp.3d 923, 940-41 (N.D. Cal. 2017).  Because the second and third factors are so closely related, Courts often examine them together. *Id*., *citing Craigslist, Inc. v. Naturemarket, Inc*., 694 F.Supp.2d 1039, 1055, 1060 (N.D. Cal. 2010).

In granting ReachLocal's motion for a preliminary injunction, this Court previously ruled that ReachLocal is likely to succeed on the merits.  [Dkt. 46].  The Ninth Circuit agreed with that conclusion when it granted ReachLocal's motion to restore this Court's preliminary injunction, pending ReachLocal's appeal in this matter.  Those Orders were focused on ReachLocal's trade secret misappropriation and interference claims.  Below, ReachLocal sets forth the allegations and evidence supporting the sufficiency and merits of all of its claims.

### a)  Trade Secret Misappropriation.

In order to state a claim under the California Uniform Trade Secrets Act ("UTSA"), a plaintiff must allege "facts sufficient to show 1) the existence of subject matter which is capable of protection as a trade secret; 2) that the secret was disclosed to the defendant under circumstances giving rise to an obligation not to use or disclose the secret to the detriment of the disclose, and 3) the defendant either used the trade secret or disclosed it to a third party." *MedioStream, Inc. v. Microsoft Corp*., 869 F.Supp.2d 1095, 1112-13 (N.D. Cal. 2012) (*citing GlobeSpan, Inc. v. O'Neill*, 151 F.Supp.2d 1229, 1235 (C.D. Cal. 2001).  The Amended Complaint

alleges that ReachLocal's Database is a trade secret within the meaning of the USTA and that Cassidy both acquired the information through improper means and used it without ReachLocal's consent.  Amend Compl. ¶¶ 48-53.  The record in this case includes credible evidence supporting each of those allegations.

i)   <u>ReachLocal's Client Database is a Trade Secret.</u>

Information constitutes a trade secret so long as it "derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.'" *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal.App.4th 26, 62 (Ct. App. 2014).  In other words, the information alleged to constitute a trade secret "is valuable because it is unknown to others."  *DVD Copy Control Assn. v. Bunner*, 116 Cal.App.4th 241, 251 (Ct. App. 2004).

In California, customer lists have been protected as trade secrets even when some of the customers are readily ascertainable by others in the business. *Klamath-Orleans Lumber, Inc. v. Miller*, 87 Cal. App. 3d 458, 464-65 (Ct. App. 1978) ("although the identity of some of plaintiff's customers may have been easily ascertainable by competitors, it cannot be said that the entire or even a majority of the customers scattered throughout the nation were readily accessible to defendants here."); *Pyro Spectaculars N., Inc. v. Souza*, 861 F. Supp. 2d 1079, 1090 (E.D. Cal. 2012) (*citing with approval*, *Fireworks Spectacular, Inc. v. Premier Pyrotechnics, Inc.*, 147 F. Supp. 2d 1057, 1066 (D. Kan. 2001) (customer list a trade secret because plaintiff spent significant time and expense creating list, "including hundreds of hours of 'cold-calling.'").

Courts engage in a fact-specific inquiry to determine the issue of "readily ascertainable," focusing on whether the protected information can be duplicated through proper means, the time and effort necessary to duplicate the protected information, and the time and effort exerted compiling the information in the first place by party seeking protection. *Abba Rubber Co.*, 235 Cal. App. 3d at 21-22 at fn 9; *San Jose Constr., Inc.*, 155 Cal.App.4th at 1542-43.

The evidence in the record, *including Defendants' own evidence*, proves that ReachLocal's Database is not "readily ascertainable." ReachLocal invested substantial time and resources compiling its former and current client database. Glennon Decl. Ex. A, p. 3 (¶ 12). ReachLocal protects the secrecy of its client database through a variety of means. *Id*. (¶ 13). ReachLocal avers that it would be substantially onerous, impracticable and improper to discover any significant portion of its current client database through public means, requiring millions of searches, run at different times of the day, across multiple search platforms. Glennon Decl. Ex. B, p. 3 (¶ 6) [Seal Dkt. 101-2, 00. 86-87]. And finally, ReachLocal avers that it is *impossible* to discover through public means more than a handful of its former customer identities, who comprise the significant majority of the entire database. *Id*., Ex. B, p. 4 (¶ 11).

Given the allegations in the Amended Complaint that ReachLocal derives independent value from the fact that its Database is not generally known to the public and considering the evidence of record, which demonstrates the Database is not readily ascertainable through proper means, ReachLocal has sufficiently pled the first element of trade secret misappropriation and established it is likely to succeed on the merits.

ii)   <u>ReachLocal Presented Strong Circumstantial Evidence of Misappropriation.</u>

The record also includes strong circumstantial evidence that Defendants obtained ReachLocal's Database (or some portion thereof) through improper means. That evidence includes Defendants repeated claims that they possess ReachLocal's "entire client and ex client database," testimony from ReachLocal's Chief Products Officer who explained only 4% of that Database is readily ascertainable and that it would be impossible to replicate the entire Database through public means, Cassidy's statements that he was helped by current and former ReachLocal employees, emails sent to 700 of ReachLocal's current and former clients (only 8 of which were in the 4% subset of readily identifiable clients), Defendants admission

that they possessed a list of "tens of thousands of clients" they had not and would not produce and Defendants refusal to answer deposition questions regarding the means by which they obtained that list. *See* Glennon Decl. Ex. B, pp. 7-8 (¶ 32) and p. 13, Ex. C, p. 2 (¶ 4), Ex. L, p. 4 (¶ 3) and p. 11, Ex. M, p. 7 (¶ 24) and pp. 21-29 (PPC Claim Depo. 251:24-254:13, 263:16-264:11, 265:1-267:15), Ex. N, p. 2 (¶ 3) and pp. 8-9 (PPC Claim Depo. 191:10-12, 202:13-24).

Considering all the evidence together with Defendants' discovery misconduct, ReachLocal has strong support for its claim that Defendants misappropriated ReachLocal's Database (or some portion thereof):

> "It is well recognized with respect to trade secrets ... [that] misappropriation and misuse can rarely be proved by convincing direct evidence. In most cases, plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place. Against this often delicate construction of circumstantial evidence there frequently must be balanced defendants and defendants' witnesses who directly deny everything."

*Gable-Leigh, Inc. v. N. Am. Miss*, 2001 WL 521695, at *17 (C.D. Cal. 2001) (granting preliminary injunction).

Given the allegations in the Amended Complaint and the evidence in the record, ReachLocal has sufficiently pled and established the merits of its claim that Defendants misappropriated its trade secrets.

        b)   <u>Intentional Interference with Contractual Relations.</u>

A claim for interference with contractual relationship requires (1) a valid contract between the plaintiff and a third party, (2) defendant's knowledge of this contract, (3) intentional acts by a defendant designed to induce the disruption of the contractual relationship and (4) actual disruption of the contractual relationship resulting in damage. *Quelimane Co. v. Stewart Title Guaranty Co*., 19 Cal.4th 26, 55 (1998). The existence of a valid contractual relationship is alleged in the Amended Complaint and supported by evidence presented by ReachLocal in

opposition to Defendants MSJ. *See* Amend Compl. [Dkt. 16] ¶¶ 54-62; Glennon Decl. Ex. A, p. 9 (¶ 34) and p. 11-21.

The second two elements are supported by the allegations in the Amended Complaint and evidence regarding Cassidy's email communications with ReachLocal's CEO, threatening to disrupt ReachLocal's client relationships unless it reached an agreement/arrangement with Defendants. Amend. Compl. ¶¶ 11 and 31; Glennon Decl. Ex. A, pp. 8-9 (¶ 32) and p. 10, Ex. L, p. 2 (¶ 3) and p. 11. Those damages were demonstrated by the allegations and evidence that ReachLocal was forced to expend significant resources to mitigate the impact of Defendants' conduct and in responding to its clients' concerns. Amend. Compl. ¶¶ 36-40, 47; Naliboff Decl. Exs. A-B (ReachLocal's initial disclosures and supplemental initial disclosures); Glennon Decl. Ex. G, p. 3 (¶ 6), Ex. J, p. 2 (¶ 3), Ex. L, p. 3 (¶ 6) and pp. 13-157. ReachLocal calculated the cost of its internal response to be $40,903.85. Naliboff Default Decl. ¶¶ 2-6 and Exs. A-B. Despite ReachLocal's efforts to mitigate the results of Defendants' harassment, three of its clients cancelled their contracts as a result of Defendants' conduct. ReachLocal calculated the lost profits from those cancelled contracts to be $29,980. *Id*.

c)   <u>Intentional Interference with Prospective Economic Advantage.</u>

ReachLocal's claim for intentional interference with prospective economic advantage requires proof of (1) an economic relationship with a third party with the probability of future economic benefit to the plaintiff, (2) defendant's knowledge of that relationship, (3) intent to disrupt the same and (4) damages. ReachLocal must also prove that the Defendants' action was wrongful apart from the interference itself. *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal.4th 1134, 1153–1154 (2003). The first element is alleged in the Amended Complaint and supported by evidence that ReachLocal's former clients are also considered prospective clients because ReachLocal frequently "wins-back" clients who cancel or fail to renew their contracts. Amend. Compl. [Dkt. 16] ¶¶ 63-68; Glennon Decl. Ex. D, p. 11 (¶ 34)

and pp. 20-22. ReachLocal also presented evidence that Defendants did contact at least one former/prospective client. Glennon Decl. Ex. A, p. 5 (¶ 16). The second, third and fourth elements are again established by Cassidy's emails to ReachLocal and the evidence that ReachLocal was forced to expend additional resources to respond internally and externally to Defendants' campaign of harassment. Finally, the requirement of independent wrongfulness is established by the allegations and evidence of trade secret misappropriation set forth above.

d)    Violation of Business and Professions Code §17200.

ReachLocal has alleged and substantial evidence supports the fact that Defendants engaged in unfair and deceptive business practices within the meaning of California Business and Professions Code §17200 by misappropriating ReachLocal's Database, threatening to disrupt ReachLocal's business relations by using the list to contact ReachLocal's clients and spread false and misleading accusations that ReachLocal was ripping them off and then carrying out that threat when ReachLocal did not give in to Defendants' demands. Amend. Compl. [Dkt. 16] ¶¶ 69-71; *supra*, Sections III(D)(2)(a-c).

e)    Attempted Extortion Claim.

To prove attempted extortion, ReachLocal only has to show that Defendants intended to extort money or property from it. *Monex Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1156 (C.D. Cal. 2010). As alleged in the Amended Complaint and established by evidence presented on Summary Judgment, Defendants demanded ReachLocal get back to them within a week with an acceptable arrangement/agreement or else they would create problems with ReachLocal's clients and staff. Amend. Compl. [Dkt. 16] ¶¶ 72-76; Glennon Decl. Ex. A, p.7-8 (¶ 32) and p. 10. This demand more than suffices to show Defendants' intended to extort ReachLocal.

---

MEMORANDUM OF POINTS AND AUTHORITIES

f)      Declaratory Relief

Finally, ReachLocal's cause of action for declaratory relief, alleged at Paragraphs 77-83, seeks a declaration that Kieran Cassidy was acting as the director of PPC Claim in violation of the order of disqualification from the British Insolvency Service for misleading the public.  The Amended Complaint alleges, Cassidy is the Head of Operations at PPC Claim and has been acting as a director of the company. Amend. Compl. ¶¶ 25-27 and Exs. 9-10.  During the deposition of PPC Claim, Cassidy – who served as the 30(b)(6) designee for PPC Claim – refused to answer any questions regarding the organization of PPC Claims.  Glennon Decl. Ex. M, p. 7 (¶ 23) and pp. 16-19 (68:15-69:9, 70:20-74:4).  Taking the allegations in the Amended Complaint as true and considering Cassidy's refusal to answer ReachLocal's questions regarding his role at PPC Claim, the sufficiency of ReachLocal's pleading and the merits of ReachLocal's cause of action for declaratory relief are strong.

3.      Factor 4: ReachLocal's Monetary Demands are Reasonable.

The fourth *Eitel* factor examines the amount of money at stake in relation to the seriousness of Defendants' conduct.  *Elec. Frontier*, *supra* p. 13, 290F.Supp.3d 923, 947 (N.D. Cal. 2017).  A significant part of the relief requested by ReachLocal is injunctive.  The amount of the compensatory damages by ReachLocal is relatively small compared to Defendants' misconduct.  ReachLocal invested substantial time and resources to create its Database. When Cassidy threatened to use that Database to interfere with ReachLocal's business, ReachLocal acted swiftly to obtain a preliminary injunction.  Its lost profits were mitigated as a result of those efforts. ReachLocal is also seeking to recover its attorneys' fees pursuant to Section 3426.4 of the USTA.  The amount of those fees is governed by Local Rule 55-3 and the lodestar analysis provided in Section III(E)(3) of this Motion.

4.      Factor 5: There is no Dispute Regarding Material Facts.

The papers filed by the parties in connection with Defendants MSJ and Rule 11 Motion set forth two key disputes between the parties.

First, Cassidy claimed he obtained ReachLocal's entire client and ex-client database by purchasing lists from third parties and performing searches on the Internet. This is a factual dispute, however, ReachLocal countered Defendants claim with evidence proving that Cassidy could not have replicated ReachLocal's Database as he described. Defendants produced no documents to support their claim that Cassidy performed thousands of internet searches or purchased lists from third parties. Indeed, Cassidy refused to produce the client list in his possession and engaged in other obstructive discovery misconduct. Accordingly, although Defendants continue to proclaim that they obtained ReachLocal's client list through publicly available means, it is unlikely Defendants would produce any direct evidence to support Cassidy's testimony after the MSJ, Rule 11 Motion and discovery process afforded them the opportunity to do so.

Second, Defendants argued ReachLocal did not lose any clients as a result of their communications. ReachLocal does not have to establish it lost any clients in order to prevail on its interference claims. ReachLocal only needs to establish the interference made those contracts more burdensome for ReachLocal and ReachLocal amassed substantial evidence that its clients were upset by Defendants' claims and that ReachLocal devoted substantial resources to retaining affected clients and responding to Defendants both internally and externally. That evidence is undisputed. Further, the testimony from ReachLocal's former clients and the evidence regarding InLight's communications with ReachLocal's agency partner are not in dispute. The parties simply have different views of that evidence. The Court may review the evidence itself and determine whether ReachLocal has presented sufficient proof in support of its motion for default judgment awarding ReachLocal the lost profits associated with those accounts.

     5.   <u>Factor 6: The Default is not Due to Excusable Neglect.</u>

The record in this case is clear. Defendants pursued a costly scorched earth litigation strategy designed to obstruct ReachLocal's access to the evidence in their possession and drive up ReachLocal's litigation costs with frivolous summary

judgment and Rule 11 motions.  Defendants also forced a motion to compel further discovery, withholding documents until two days after ReachLocal presented them with its portion of the joint stipulation and failing to appear and testify properly after ReachLocal travelled to London to take Defendants' deposition.  ReachLocal was not deterred by this strategy.  ReachLocal amassed substantial evidence in opposition to the MSJ and Rule 11 Motion and stood ready to try its case upon remand from the Ninth Circuit. Even though Defendants' counsel subsequently withdrew, Cassidy receives ECF notifications of all filings and orders in this Action. This Court gave Defendants notice that they faced default if PPC Claim did not file an appearance for replacement counsel.  Defendants' failure to heed this Court's warnings can only be interpreted as their intentional abandonment of their defense to ReachLocal's claims.

6.    Factor 7: The Policy Favoring Resolution on the Merits.

ReachLocal acknowledges the strong public policy favoring resolution on the merits, but PPC Claim cannot proceed in this Action without counsel, and Cassidy's conduct during the London depositions suggest it is extremely unlikely that he would travel to the United States to attend a trial on ReachLocal's claims.  Notably, given the posture of this case, Defendants could have retained counsel at very little additional cost to appear on their behalf with respect to the fully briefed motions that were pending before this Court.  The resolution of those motions would have informed all parties with respect to strength of ReachLocal's claims and evidence and could have led to productive settlement discussions – again at little additional cost to Defendants.  Defendants' failure to see their own motions to conclusion and refusal to appear prevented a decision on the merits of those motions and on ReachLocal's claims. *Craigslist, Inc. v. Naturemarket, Inc*., 694 F.Supp.2d 1039, 1061 (N.D. Cal. 2010) (the sixth Eitel factor weighs in favor of default where defendant's failure to appear rendered a decision on the merits impossible).

7.    Summary of the Eitel Factors

Because all six of the Eitel factors weigh in favor of default judgment,

ReachLocal now turns to the requested damages and injunctive relief.

### E.   Remedies.

#### 1.   Injunctive Relief

The USTA provides that actual or threatened misappropriation may be enjoined. Cal. Civ. Code § 3426.2(a).  *Am. Credit Indem. Co. v. Sacks,* 213 Cal. App. 3d 622, 625 (1989) (plaintiff entitled to injunctive relief where the use of its customer list to solicit plaintiff's customers constituted misappropriation of plaintiff's trade secrets).  This Court has already issued a PI that is narrowly tailored to stop Defendants from their continuing use of ReachLocal's trade secrets and their interference with ReachLocal's contractual relationships and prospective economic advantage.  The Court's Order granting the PI states as follows:

> Defendants PPC Claim Limited and Keiran Paul Cassidy are hereby enjoined from further communicating to ReachLocal clients, employees, or investors, either through direct communications, mass mailings, or otherwise, whether through regular paper copies or electronic through email, LinkedIn, or any other website; Description of Injury and why irreparable: ReachLocal will incur irreparable harm to its goodwill and reputation.

ReachLocal requests the Court enter a permanent injunction.

#### 2.   Monetary Damages.

ReachLocal has presented the declaration of its in-house counsel, Tenlay Naliboff, who coordinated ReachLocal's response to Defendants' campaign of harassment.  Mr. Naliboff provided evidence regarding the monthly revenues for each of the three lost contracts and the operating profit margin for those contracts. Naliboff Decl. ¶ 5.  ReachLocal assumes those contracts would have continued for three more years if Defendants had not intervened, based on the average life cycle for its clients. Naliboff Decl. Exs. A and B; *Id.* ¶ 5.  Lost profits were then calculated according to the following formula: Operating profit (%) x Monthly revenues x 36 months = Lost profits. The total amount of lost profits was, therefore, determined to be $29,980.  *Id.* ¶ 5 and Exs. A-B.

Mr. Naliboff also provided evidence of the time and rate for each ReachLocal officer and employee who devoted remedy the impact of Defendants' conduct.  The costs associated with those efforts was calculated by multiplying the time spent by the implied hourly rate which equaled $40,903.85. *Id*.

### 3.  Attorneys' Fees.

The Court may consider ReachLocal's motion for attorneys' fees if the Court finds Defendants liable on ReachLocal's trade secret misappropriation claim. Section 3426.4 of the USTA authorizes attorney's fees, costs, and expert witness services where the Defendants are found guilty of willful and malicious misappropriation.  The allegations and evidence support such a finding here, where Defendants actions were intentional and fueled by anger. Glennon Decl. Ex. O (PPC Claim Deposition testimony at 181:12-183:4). Cassidy had no idea whether ReachLocal was in fact ripping off its clients in the U.S. (*Id*. at 212:7-11).  He was upset that his efforts in the U.K. failed and he wanted to punish ReachLocal.

Local Rule 55-3 sets forth a schedule to determine the amount of attorneys' fee awards on default.  Local Rule 55-3 provides that an attorney claiming fees in excess of the schedule may file a written request at the time of entry of default judgment.  ReachLocal contends that departure from the schedule is appropriate here, where default was entered after two years of litigation (as opposed to following the failure to answer or otherwise appear at all).

The lodestar method is the accepted method for determining a reasonable attorneys' fee award. *See Earthquake Sound Corp. v. Bumper Indus*., 352 F.3d 1210, 1214-15 (9th Cir. 2003). Under the lodestar method, a court must multiply the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Once calculated, the lodestar rate may be adjusted to account for other factors.  *Morales v. City of San Rafael*, 96 F.3d 359, 362 n. 9 (9th Cir. 1996).

In evaluating reasonable hourly rates for attorneys' and paralegals, Courts often look to the so-called "Laffey matrix," which rates are set forth below:

**BNSK Attorney Rates And Total Hours**

| Attorney | Years out of School | Rate 2016/17 | Rate 2017/18 | Rate 2018/19 | Total Hours 2016-19 |
|---|---|---|---|---|---|
| Khan | 12-15 | 495 | 495 | 550 | 532 |
| Brown | 20-23 | 495 | 495 | N/A | 3 |
| Glennon | 17-20 | 350 | 350 | 425 | 670.3 |
| Fricke | 8-11 | 495 | 495 | N/A | 233.8 |
| Eberwine | 8-11 | 275 | 275 | N/A | 62.8 |
| Barnes | 2-5 | 200 | 225 | 350 | 501.4 |
| Warren | 1-4 | 200 | 200 | N/A | 62.8 |

**Laffey Matrix**

| Years out of School | 2016/17 | 2017/18 | 2018/19 |
|---|---|---|---|
| 1-3 | 343 | 359 | 371 |
| 4-7 | 421 | 440 | 455 |
| 11-19 | 608 | 636 | 658 |
| 20+ | 826 | 864 | 894 |

Glennon Decl. ¶¶ 26-28; www.laffeymatrix.com.

BNSK's rates are objectively reasonable because they are below the rates in the Laffey matrix and Los Angeles is a comparable market for attorneys' fees to the Washington/Baltimore market, which informs the Laffey matrix. The total number of hours per attorney is also reasonable given the contentious nature of this litigation. Glennon Decl. ¶¶ 26-29. The total amounts of attorneys' fees incurred by ReachLocal in this Action is $578,512.04. Glennon Decl. ¶ 29.

## IV. **CONCLUSION**

For the foregoing reasons, ReachLocal requests this Court grant this Motion and enter default judgment in accordance with the [Proposed] Default Judgment submitted concurrently herewith.

Dated: May 10, 2019          **BROWN NERI SMITH & KHAN, LLP**

By:   /s/ Amjad M. Khan
          Amjad M. Khan
          *Attorneys for Plaintiff,*
          ReachLocal, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, Rowennakete P. Barnes, hereby declare under penalty of perjury as follows:

I am an attorney at the law firm of Brown Neri Smith & Khan, LLP, with offices at 11601 Wilshire Boulevard, Suite 2080, Los Angeles, California 90025. On the date below, I caused the foregoing **REACHLOCAL INC.'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT** to be electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on June 17, 2019.

 /s/ Rowennakete P. Barnes